# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

CARRIE ANN GADDISON,  )
                                    )

      Plaintiff,           )
                                      )

v.                             )     Case No. 4:18-cv-0811-JEO
                                      )

ANDREW SAUL,          )
Commissioner of Social Security,   )
                                      )

      Defendant.        )

## MEMORANDUM OPINION

Plaintiff Carrie Ann Gaddison brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her Supplemental Social Security ("SSI") and Disability Insurance Benefits ("DIB"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(a). (Doc. 12). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I. PROCEDURAL HISTORY

Plaintiff filed her applications for SSI and DIB on April 12, 2011,[2] alleging disability beginning December 30, 2007, but at her first hearing she orally amended the alleged onset date to January 1, 2008. (R. 76, 127-28, 210-18).[3] After her applications were denied initially, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. 161-74). After the video hearing, the ALJ issued a decision on March 13, 2013, finding Plaintiff not disabled. (R. 73-85, 91-116). Plaintiff then filed a request for review of the ALJ's decision, and the Appeals Council ("AC") denied Plaintiff's request for review. (R. 1-4). Plaintiff filed a complaint in this court seeking review, and on March 21, 2016, the court remanded the case to the Commissioner for further administrative proceedings. (R. 855-74). The Appeals Council, in turn, remanded Plaintiff's case to an ALJ. (R. 876-78).

On June 22, 2017, the ALJ held a video hearing. (R. 813-30). Plaintiff did not appear at the hearing, but her attorney was present. (*Id*). At the hearing, Plaintiff again amended her alleged onset date to March 25, 2011. (R. 817). The ALJ issued

---

[2] Plaintiff previously applied for a period of disability, DIB, and SSI in 2009, and an ALJ denied her applications in a decision dated March 24, 2011. (R. 132-45). Plaintiff did not seek judicial review after the Appeals Council denied her request for review of the ALJ's decision (R. 152-56).

[3] References herein to "R. __" are to the administrative record found at documents 7-1 through 7-17 in the court's record. The page number references are to the page numbers in the lower right-hand corner of each page in the record.

her decision on November 24, 2017, denying Plaintiff's applications. (R. 792-805). Plaintiff exhausted all her administrative remedies, and this case is ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. FACTS

Plaintiff was born on February 11, 1976, and was forty-one years old on the date of the ALJ decision. (R. 210, 212, 805). She completed the eleventh grade and her past work experience includes employment as a certified nurse's aide. (R. 112, 272). Plaintiff originally alleged she was unable to work because of fibromyalgia, back pain, a rod and screws in her back, pain and numbness in both legs, difficulty walking, neck pain, high blood pressure, muscle spasms, nervousness, anxiety, depression, difficulty sleeping, and PTSD. (R. 271). At the first ALJ hearing, Plaintiff testified that she was unable to work because of uncontrollable back pain, severe numbness on her left side, and congestive heart failure. She stressed that the chronic back pain was the primary reason she could not work. (R. 96).

Following Plaintiff's administrative hearing, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of March 25, 2011. (R. 795). The ALJ further found that Plaintiff had the following medically determinable severe impairments:

> morbid obesity, degenerative joint disease of the knees and back, hypertension, asthma/chronic obstructive pulmonary disease (COPD),

gastroesophageal reflux disease (GERD), degenerative disc disease, cervical radiculopathy, depression/bipolar disorder, anxiety, and post-traumatic stress disorder (PTSD).

(R. 795).[4] She also found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (R. 796-798). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work, with the following restrictions:

The claimant can occasionally lift and/or carry ten pounds and frequently left and/or carry less than ten pounds. She can sit six of eight hours and stand and/or walk two of eight hours. She should never climb ladders, ropes, or scaffolds; and she can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. The claimant should avoid all exposure to workplace hazards, for example, dangerous machinery and unprotected heights; and she should avoid concentrated exposure to pulmonary irritants, such as dust, fumes, odors, and gases, as well as poorly ventilated areas. The claimant can maintain attention and concentration for two-hour periods at a time. The claimant can frequently finger and handle with the left upper extremity and can frequently push and/or pull with the left lower extremity and left upper extremity. She can understand, remember, and carry out simple instructions and can have occasional interaction with the general public and frequent interaction with co-workers. The claimant can adapt to routine and infrequent workplace changes and can make simple work-related decisions.

(R. 798). The ALJ then found that Plaintiff could not return to her past relevant

---

[4] The ALJ found that Plaintiff's alleged impairments of congestive heart failure and headaches were not severe because there was no evidence that they could reasonably be expected to significantly limit her basic work activities. (R. 795). Additionally, the ALJ found that Plaintiff's alleged impairments of fibromyalgia, cerebrovascular accident and limited vision were not medically determinable impairments. (R. 795-96). Plaintiff does not challenge any of these findings.

work as a certified nurse's assistant. (R. 803). After noting Plaintiff's age, education, work experience, and RFC, the ALJ found jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. 803-04). The ALJ referenced the testimony of the vocational expert ("VE") and listed the jobs that the VE stated Plaintiff could perform, including: final assembler, wire wrapper, and surveillance system monitor. (R. 804). Based on the above, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 805).

## III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2015); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the Commissioner's findings. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990)).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(b) & 416.920(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014).[5] The plaintiff bears the burden of proving that she was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also* 20 C.F.R. § 404.704. The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id.*

## V. DISCUSSION

Plaintiff asserts five claims of error: (1) the ALJ erred in finding Plaintiff did not meet Listings 12.04 and 12.06; (2) the ALJ failed to accord proper weight to the

---

[5] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

Commissioner's examining physician and examining psychologist; (3) the ALJ improperly applied the pain standard; (4) the ALJ failed to give Plaintiff's obesity proper consideration; and (5) the VE's testimony was based on an inaccurate and incomplete hypothetical question. (Doc. 19 at 23-45). The court addresses each issue separately below.

### A. Listings 12.04 (Depression, Bipolar and Related Disorders) and 12.06 (Anxiety and Obsessive-Compulsive Disorders)

Plaintiff contends that her impairments meet Listings 12.04 and 12.06.[6] (Doc. 19 at 23-27). She summarizes medical records from the following sources in support of her argument: Gadsden Psychological Services/Dr. David Wilson; Dr. Jay Narola/Psychiatric Center; Dr. Paul B. Hall/Regional Medical Center; Sathyan Iyer (Consultative Evaluation); Marshall Medical Center; Henry Born; and Premier Family Care/Jess Youngblood. (*Id.*). Plaintiff asserts that these medical records substantiate her claim that she meets Listings 12.04 and 12.06, but does not provide any explanation as to how they do so. (*Id.*).

To meet the requirements of a Listing, a claimant must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). The Listings of Impairments in the Social Security Regulations

---

[6] Although a claimant's impairments also may equal a listed impairment, *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1526, 416.920(a)(4)(iii), 416.926, Plaintiff did not argue that her impairments equaled Listing 12.04, Listing 12.06, or any other Listing. (*See* Doc. 19 at 23-27).

identify impairments so severe as to prevent a person from engaging in gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1. If a claimant meets a listed impairment or otherwise establishes an equivalence, the regulations conclusively presume a disability. *See* 20 C.F.R. § 416.920(d). If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment. *Nichols v. Comm'r of Soc. Sec.*, 679 F. App'x 792, 795 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

The burden is on Plaintiff to show that her impairments meet a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). The regulations also provide that Plaintiff "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about [her] medical impairment(s). . . ." 20 C.F.R. § 404.1512(a). To meet a Listing, Plaintiff's impairment must "meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

Plaintiff can meet Listing 12.04 or Listing 12.06 by showing that she satisfies the criteria in paragraphs A and B of those listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereinafter "Listing(s)") §§ 12.04, 12.06. Alternately, Plaintiff may show she meets these Listings by satisfying the criteria of paragraph C of Listing 12.04,

or paragraphs A and C of Listing 12.06. The A criteria of the Listings set forth clinical findings that medically substantiate a mental disorder. *See* Listing 12.00A. The criteria in paragraphs B and C describe functional limitations that would prevent any gainful activity. *Id*.

To satisfy the B criteria of either Listing 12.04 or 12.06, Plaintiff must establish she has an extreme limitation of one, or a marked limitation of two of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage oneself. *Id*. To satisfy criteria C of either Listing 12.04 or 12.06, Plaintiff must establish a mental disorder that is "serious and persistent" in that it has lasted for a period of over at least two years and there is evidence of both the following: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (2) marginal adjustment, i.e., a minimal capacity to adapt to changes in your environment or to demands that are not already part of daily life. *Id*.

The ALJ found that Plaintiff had only mild limitations in the functional areas of understanding, remembering, or applying information and adapting and managing for oneself and moderate limitations in interacting with others and

10

concentrating, persisting, or maintaining pace of both Listings. (R. 797-98). With regard to the C criteria, the ALJ found that although Plaintiff has been treated with medications, she has not required ongoing therapy, a structured setting or hospitalizations. (R. 798). The ALJ also noted Plaintiff's ability to adapt to change, such as moving from Kentucky to Alabama and other changes in her living arrangements. (R. 798).

As noted above, although Plaintiff challenges these findings, she does not attempt to explain why she satisfied these Listings. Indeed, she does not even point to which area of functioning in paragraph B she challenges, or if she challenges the finding regarding paragraph C. Instead, she summarizes her medical treatment, diagnoses and opinions from multiple sources. (Doc. 19 at 23-27). However, merely being diagnosed with these conditions does not establish that her mental impairments interfered with her ability to perform basic work activities. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."). To be sure, Plaintiff has received treatment for mental health conditions, and the ALJ accounted for Plaintiff's depression/bipolar disorder,

anxiety and PTSD by limiting her RFC. (R. 798).

Whether Plaintiff met the criteria of the Listings requires careful weighing of medical documentation and reports. The court does not and will not reweigh evidence or analyze the factual determinations of the ALJ. In the instant case, the ALJ made clear that she considered the facts, compared them to the statutory requirements, and determined that Plaintiff did not meet the requirements of the Listings. (R. 797-98). Plaintiff has not pointed to specific evidence which demonstrates that she meets the criteria, nor has the court found any such evidence in Plaintiff's medical records. It is clear that Plaintiff has difficulties in mental functioning; however, a review of the record demonstrates that there is substantial evidence to support the ALJ's finding of mild and/or moderate, rather than extreme or marked, difficulties.

Plaintiff must carry the burden by presenting evidence of a diagnosis of a condition covered by the Listings and a treatment history demonstrating that the durational requirements are met. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). This she has failed to do. Substantial evidence supports the ALJ's determination with regard to the Listings.

### B. Weight to Examining Physician and Psychologist

Second, Plaintiff contends that the ALJ failed to accord proper weight to the

Commissioner's examining physician, Dr. Sathyan Iyer, and the examining psychologist, Dr. David Wilson. (Doc. 19 at 27-31). In making her decision, "the ALJ must state with some particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). In determining the weight given to a claimant's medical opinions, the ALJ may look at several factors: the examining and treatment relationship between the doctor and patient, the supportability of the doctor's opinion, the consistency of the doctor's opinion with the record as a whole, the doctor's specialty, and other relevant factors. 20 C.F.R. § 404.1527(c).

A doctor's opinion may be discounted based on the length and frequency of the treatment relationship and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(c)(2). A physician who only saw the claimant on a single occasion is not considered a treating physician, and his opinion is not entitled to great weight. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). The opinion of a treating physician who has seen the claimant on a number

of occasions will be afforded more weight than a doctor who has only seen the claimant once. *Id.* More weight will be afforded to a physician who has had long enough to form a longitudinal picture of the claimant's impairment. *Id.* The more knowledge a treating source has about the patient, the more weight will be given to that doctor's opinion. *Id.*

Here, both Dr. Iyer and Dr. Wilson were consultative examiners who only saw Plaintiff once. (R. 560-65, 1069-76). As such, their opinions were not entitled to any deference or special consideration. *See Crawford*, 363 F.3d at 1160; *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The court will examine each opinion separately below.

### 1. Dr. Iyer

Plaintiff saw Dr. Iyer for a consultative medical examination on September 10, 2011. (R. 560-65). Dr. Iyer noted Plaintiff's reported physical problems, including her back, neck, left shoulder and knee pain. (R. 560). He stated that Plaintiff walked slowly, had difficulty balancing, and could not walk on her heels, tiptoes, or squat. (R. 561). He also reported that she had bilateral expiratory rhonchi of the lungs, some left ankle inversion, and reduced range of motion in her cervical and lumbar spine, bilateral hips and knees, left ankle and left shoulder, as well as hypertension (not controlled), obesity and COPD (not controlled). (R. 562-63). Dr.

Iyer noted that Plaintiff is a half-a-pack a day smoker. (R. 560). In his final comment, Dr. Iyer stated that Plaintiff had "significant impairment of functions involving standing, walking, squatting, climbing, working at heights, working around moving machinery, bending, lifting, carrying, and overhead activities. She does not have limitations of functions involving sitting, handling, hearing or speaking." (R. 563).

The ALJ afforded the opinion of Dr. Iyer "some weight" because "his opinion was insufficiently specific and he did not limit the claimant's ability to sit or to handle." (R. 802). The court rejects Plaintiff's contention that the ALJ "failed to state with at least some measure of clarity the ground for [her] decision in repudiating the opinion of the examining physician." (Doc. 19 at 30). The ALJ clearly articulated the weight given to Dr. Iyer's opinion and clearly articulated her reason for only assigning it some weight. Additionally, in accordance with Dr. Iyer's opinion, the RFC formulated by the ALJ contains significant limitations in Plaintiff's ability to stand, walk, lift, carry and work around workplace hazards. (R. 798). Plaintiff does not identify what portion of Dr Iyer's opinion would have called for additional workplace limitations that were not included in the Plaintiff's RFC, (*See* Doc. 19 at 28-31), and the court can find none. Further, the medical evidence from treating sources do not indicate Plaintiff had any limitations beyond

those included by the ALJ.  For these reasons, substantial evidence supports the assignment of "some weight" to the opinion of Dr. Iyer.

### 2. Dr. Wilson

Plaintiff visited Dr. Wilson for a psychological evaluation on August 13, 2013, at the request of her attorney.  (R. 1069-76).   Dr. Wilson reviewed the records of Dr. Jay Narola (dated 10/21/10), Hall Regional Medical Center (dated 3/26/11-5/8/11), Dr. Henry Born, consulting examiner (dated 3/19/09), and Premier Family Care and Dr. Youngblood (2/8/12-9/612).   (R. 1069).   Dr. Wilson diagnosed Plaintiff with bipolar disorder, generalized anxiety and PTSD.   (R. 1074).  Additionally, Dr. Wilson completed a mental health source statement and checked extreme degree of limitations in the following 14 of the 20 functional abilities:

- ability to remember locations and work-like procedures;
- ability to understand and remember detailed instructions;
- ability to carry out detailed instructions;
- ability to maintain attention and concentration for extended periods;
- ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- ability to sustain an ordinary routine without special supervision;
- ability to work in coordination or proximity to others without being distracted by them;
- ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- ability to accept instructions and respond appropriately to criticism from supervisors;
- ability to get along with coworkers or peers without distracting them

or exhibiting behavioral extremes;
- ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
- ability to respond appropriately to changes in the work setting;
- ability to be aware of normal hazards and take appropriate precautions; and
- ability to set realistic goals or make plans independently of others.

(R. 1075-76). He also checked the box for marked degree of limitations in the following 3 functional abilities:

- ability to make simple work-related decisions;
- ability to interact appropriately with the general public; and
- ability to travel in unfamiliar places or use public transportation.

(R. 1075-76).

The ALJ gave little weight to the opinion of Dr. Wilson. (R 802). The ALJ noted that "many of these limitations, such as an extreme limitation in the ability to maintain socially appropriate behavior and adhere to basic standard of neatness and cleanliness, were inconsistent with the reported result of his own evaluation." (R. 802). She also stated that the opinion "appears to be based primarily on the claimant's subjective complaints." (R. 802). The ALJ further explained her reasoning for assigning the opinion little weight as follows:

> For example, the claimant told Dr. Wilson that she had suffered a stroke two months earlier, and he concluded that she had not fully recovered. However, the medical evidence clearly establishes that no stroke occurred. Dr. Wilson also opined that the claimant's level of distress and disturbance were so severe that she would have difficulty working in any environment. However, the claimant made more money the year

after he rendered his opinion that she had earned in any previous year, although there is no evidence she sought any mental health treatment after his evaluation. If the claimant's mental limitations had been as severe as the marked and extreme limitations Dr. Wilson reported, it is unlikely that she could have returned to near-SGA employment less than a year after his evaluation without the benefit of mental health treatment.

(R. 802).

Considering the totality of the Plaintiff's history, there was substantial evidence to support the ALJ's conclusion that Dr. Wilson's opinion was entitled to little weight. A physician's report "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Crawford*, 363 F.3d at 1159 (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)). The ALJ discussed Dr. Wilson's opinion and explained with particularity the reasons why she afforded it little weight. (R. 802). Plaintiff's argument that Dr. Wilson's opinion was not primarily based on her subjective complaints because he reviewed documents prior to the assessment, (doc. 19 at 28), rings hollow, especially where his opinion is not supported by the record as a whole. The clinical findings related to Plaintiff's mental condition do not support Dr. Wilson's extreme limitations. And, as noted by the ALJ, her employment in 2014 and 2015 undermines Dr. Wilson's opinion. (R. 802, 959-60, 693, 982).

Additionally, with regard to the mental health source statement, it is a form

document that contains a series of general statements with check marks in certain categories of degree of limitation with absolutely no explanation for the answers given. (R. 1075-76). It is conclusory and has limited probative value. Indeed, several courts have criticized "form reports" such as the one Dr. Wilson provided where a physician merely checks off a list of symptoms without providing an explanation of the evidence that supports the decision. *See Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) ("form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding use of "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions"). Further, as noted by the ALJ, many of these limitations were inconsistent with Dr. Wilson's own assessment notes. For these reasons, substantial evidence supports the assignment of "little weight" to the opinion of Dr. Wilson.

## C. Application of the Pain Standard

The next issue raised by Plaintiff concerns the adequacy of the ALJ's evaluation of her pain complaints. (Doc. 19 at 31-38). In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the **claimant must satisfy two parts** of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (emphasis added); *see also* 20 C.F.R. §§ 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate their intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 416.929(c) & (d). While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including his history, medical signs and laboratory findings, and statements by medical sources or other sources about how her symptoms affect her. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the

ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The court finds that Plaintiff has abandoned her argument with respect to the ALJ's application of the pain standard. "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). "[A]n appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (quotation marks omitted).

The court acknowledges that Plaintiff's brief expressly identifies an argument that the ALJ improperly applied the pain standard. Specifically, the summary of the ALJ's purported errors and law, (doc. 19 at 3), and one numbered section of her brief, (*id.* at 31-38), state that she is challenging the ALJ's application of the pain

standard. However, the brief does nothing more.  In the numbered section of her brief, Plaintiff recounts the relevant standard and then block quotes, summarizes, or simply provides citations to, cases in which various federal courts found that the ALJ improperly applied the pain standard.  (*Id*.).  Plaintiff's brief does not provide any analysis or discussion as to how the ALJ improperly applied the pain standard and/or discredited her subjective testimony regarding her pain.  (*See id*.).  Instead, Plaintiff simply states "[t]he ALJ's analysis is deficient.  The issue is not whether the objective evidence supports the allegation of pain.  The ALJ did not apply the proper pain standard."  (*Id*. at 38).  This sort of perfunctory argument gives neither the Commissioner nor the court any guidance about Plaintiff's argument aside from the fact that she asserts the existence of an error.  *See Singh*, 561 F.3d at 1278 ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue . . . ."); *see also Sapuppo v. Allstate Floridian Ins. Co*., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").  Nor does Plaintiff's reply brief remedy the deficiencies of her initial brief.  (*See* Doc. 21 at 9-11).  For these reasons, the court deems Plaintiff's argument abandoned.

Notwithstanding, the court has reviewed the record and concludes that the ALJ properly applied the pain standard in her consideration of Plaintiff's subjective complaints and the formulation of Plaintiff's RFC. The objective medical evidence, as accurately summarized by the ALJ, (R. 800-03), does not indicate that Plaintiff's condition was as limited as she claims, particularly for any consecutive twelve-month period. Additionally, other evidence in the record, including her ability to work near the level of substantial gainful activity in 2014 and 2015, with no objective evidence of any significant change in her physical and mental conditions, undermine her subjective complaints. For these reasons, the court finds no error with regard to the ALJ''s application of the pain standard, even if Plaintiff had adequately raised the issue.

### D. Consideration of Plaintiff's Obesity

Plaintiff's fourth argument is that the ALJ did not adequately evaluate her obesity under SSR 02-1P. (Doc. 19 at 38-39). Specifically, Plaintiff contends that the ALJ "did not adequately explain how her gross weight would affect her ability to function in the work setting." (*Id*. at 38). The court disagrees.

An ALJ must consider obesity when assessing a claimant's overall medical condition. "Obesity shall be considered when determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the

impairment meets or equals the requirements of a listed impairment, and (4) the impairment bars claimant 'from doing past relevant work and other work that exists in significant numbers in the national economy.'" *Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (citing SSR 02–1p). When obesity is identified as a medically determinable impairment, the ALJ must consider "any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify." SSR 02-1p.

A review of the record establishes that the ALJ properly considered Plaintiff's obesity as required by SSR 02-1p. At step 2 of the evaluation process, the ALJ found that Plaintiff had a combination of severe impairments, including morbid obesity.[7] (R. 795). At step three, the ALJ found that Plaintiff's combination of impairments did not meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 796). Then, at step four, the ALJ noted that Plaintiff's BMI is categorized as extreme or high-risk obesity, and that she considered the effects of Plaintiff's obesity in her decision and formulation of the RFC. (R. 801). Specifically, the ALJ noted that her obesity, in combination

---

[7] The one case Plaintiff block quotes in support of her argument is not applicable because in that case, the ALJ did not find obesity to be a severe impairment. *See Early v. Astrue*, 481 F. Supp. 2d 1233, 1239-40 (N.D. Ala. 2007).

with her other physical impairments, "significantly reduces the claimant's ability to perform exertional and postural activities. Her obesity, other impairments, pain, and fatigue, warrant a reduction to a restricted range of sedentary work, as set out in the residual functional capacity." (*Id.*).

Based on the above, the ALJ's analysis as to Plaintiff's obesity satisfies the requirements of SSR 02–1p. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009); *Lewis*, 487 F. App'x at 483 (ALJ properly considered plaintiff's obesity in accordance with SSR 02-1p where ALJ determined plaintiff's obesity was a severe impairment but did not meet or equal a listing and then considered plaintiff's obesity in assessing the RFC). Therefore, the court finds no error.

### E. VE Hypothetical

In Plaintiff's final argument, she contends that the VE's testimony does not provide substantial evidence because it was based on an inaccurate and incomplete hypothetical question. (Doc. 19 at 39-45). In particular, Plaintiff argues that the ALJ did not include any limitations based on her depression/bipolar disorder, anxiety and PTSD. (*Id.*).

For a vocational expert's testimony to be considered substantial evidence, the ALJ must present a hypothetical question that "comprises all of the claimant's

impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). At step four of the ALJ's analysis, she must determine the Plaintiff's residual functional capacity. 20 C.F.R. § 404.1520(e). Plaintiff's RFC is determined based on all the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). The hypothetical posed by the ALJ does not need to include every symptom of the claimant, only "the claimant's impairments." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007).

The ALJ did not pose an improper or incomplete hypothetical. Her question incorporated all of Plaintiff's impairments based on all the relevant evidence. The ALJ's hypothetical asked the VE to consider a hypothetical individual with the Plaintiff's age, education, work experience, and limited sedentary RFC. (R. 826-27). The hypothetical properly included all of Plaintiff's limitations, including her mental impairments, that were supported by the record. The ALJ was not required to include in her hypothetical those limitations that were not supported by the record, including those of Dr. Wilson, which, as discussed previously, were properly afforded little weight by the ALJ. *See Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986). Because the hypothetical was proper and comprised all of Plaintiff's limitations, the VE's opinion that Plaintiff can perform jobs that exist in significant number in the national economy, including that of a final assembler,

wire wrapper, and surveillance system monitor, is substantial evidence.

## VI. CONCLUSION

For the reasons set forth above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The decision of the Commissioner is due to be affirmed. An appropriate order will be entered separately.

**DATED** this 23rd day of January, 2020.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge